## TRUST COMPANY DIRECTOR LOSES HIS LIEN.

Circuit Court of Cuyahoga County.

THE CLEVELAND TRUST COMPANY, ASSIGNEE, v.
E. H. KLAUSTERMEYER.*

Decided, January 22, 1912.

*Equitable Lien—Agreement for Collateral—Collateral Not Identified or Set Aside.*

A trust company being in failing condition its directors were called together and requested to deposit with the company at least $5,000 each, it being agreed that if they would do so, each should have collateral security therefor "from the securities then owned by and in the possession of the trust company." Only two of the directors complied with the request, one depositing his money and receiving collateral as security therefor. The other (plaintiff), deposited $5,000 but neglected to get his collateral at the time and let the matter go until after the failure of the bank a few days later. No particular securities were ever set aside for him; *Held:* He was not entitled to an equitable lien upon all the securities of the trust company which came into the hands of its assignee in insolvency.

*Blandin, Rice & Ginn,* for plaintiff in error.
*Ford, Snyder & Tilden,* contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

This action originated in the Insolvency Court of Cuyahoga County upon an application of Klaustermeyer to have a preference allowed him in the sum of $5,000 and interest out of the assets of the defunct Euclid Avenue Trust Company, in the hands of the Cleveland Trust Company, its assignee.

The insolvency court disallowed the claim; on appeal to the common pleas court it was allowed, and the judgment of the latter court is here for review on a finding of facts which seems to be sustained by the evidence given on the hearing.

*Reversed with opinion, *Klaustermeyer* v. *Cleveland Trust Co.*, 89 Ohio State, ——.

It appears that a few days before it failed a meeting of the directors of the Euclid Avenue Trust Company, of whom Klaustermeyer was one, was held at which it was stated that the national bank through which the trust company cleared would refuse to clear longer for it unless a large sum in cash was raised by the trust company. The directors were requested to raise this money and deposit with the trust company, at least $5,000 each, it being agreed that if they would do so, each should have collateral security therefor "from the securities then owned by and in the possession of the trust company."

Only two of the directors complied with the request. A director named Oram deposited $5,000 and received collateral as security therefor. Mr. Klaustermeyer deposited $5,000 but neglected to get his collateral at the time, being in a hurry, and let the matter go until after the failure of the bank a few days later. No particular securities were ever set aside for him.

On his application to the insolvency court he claimed an equitable lien upon all the securities of the trust company which came into the hands of its assignee.

The doctrine of equitable lien is recognized in Ohio, and is thus stated by Pomeroy in Section 1235 of his third volume on Equity Jurisprudence:

"The doctrine may be stated in its most general form that every executory agreement in writing whereby the contracting party sufficiently indicates an intention of making some particular property, real or personal, or fund, therein described or identified, a security for a debt, or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforcible against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property. The doctrine itself is clearly an application of the maxim, 'equity regards as done that which ought to be done.' In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficnent clearness an intent that the

property so described, or rendered capable of identification, is to be held, given or transferred as security for the obligation.''

This case appears to come within the rule thus stated, except in one particular: the agreement relied upon does not "deal with some particular property, either by identifying it, or by so describing it that it can be identified.''

Had the agreement been that Klaustermeyer was to have a lien on *all* the securities then owned by and in the possession of the trust company, the description of the collateral would have been sufficient under the holding of the leading case of *Countess of Mornington* v. *Keane*, 2 DeGex & J., 292, where the covenant was that all the lands which the covenantor should have on a certain day should be charged, or be security, for a certain debt.

In the case of *Atlantic Trust Company* v. *The Carbondale Coal Company*, 99 Ia., 234, the agreement was that ''all the coal company's accounts for coal sold,'' should be assigned to the bank.

We have examined all the authorities cited by counsel on both sides, and find that the agreements construed in each case where a lien was sustained were respecting specific property, or all of the covenantor's property of a certain kind or some aliquot portion of it.

The facts in this case show that Klaustermeyer was not to have a lien on all the securities of the trust company, yet that is what he is asking. He was not to have a lien on the securities delivered to Oram, nor was Oram to have a lien upon more than sufficient to secure his own deposit. The offer was made to all the directors at the same time, and they were not to have liens in common and undivided upon the securities of the trust company, but each understood, as Klaustermeyer must have understood, that when each made his deposit, each was to pick out, or have assigned to him, collateral enough in each case to be sufficient security for the amount deposited.

With this view of the facts, the judgment of the common pleas court is erroneous. Nor is it to be sustained upon the theory of a trust, expressed by Judge Phillips, who passed upon this case at one stage in the proceedings as follows:

''Treating this as a loan of money, when Klaustermeyer delivered his five thousand dollars to the bank in pursuance of the

agreement that he was to be secured for his loan of five thousand dollars, and did not then receive his securities but was to call at another time and get them, thereafter the bank held the securities in trust for the benefit of the security of Klaustermeyer. I think that created a trust relation between the bank and Klaustermeyer with reference to these securities, to the extent and effect that he would have therefrom what would secure his loan of five thousand dollars.''

This is only stating the theory of an equitable lien in another way and in a way criticised by Pomeroy in Section 1234 of his work already referred to, as follows:

''It (the equitable lien) is sometimes, although I think unnecessarily and even incorrectly, spoken of as a species of implied trust. If any reference to the theory of trust is made, it is more accurate to describe these liens as *analogous to* trusts; for while the two have some similar features, they are unlike in their essential elements.

''The very essence of every real trust—express, resulting or constructive—is the existence of two estates, in the same thing a legal estate vested in the trustee, and an equitable estate held by the beneficiary.

''In an equitable lien there is a legal estate with possession in one person, and a special right over the thing held by another; but then here the resemblance which at most is external, ends. This special right is not an estate of any kind; it does not entitle the holder to a conveyance of the thing nor to its use; it is merely a right to secure the performance of some outstanding obligation, by means of a proceeding directed against the thing which is subject to the lien. To call this a trust and the owner of the thing a trustee for the lienholder, is a misapplication of terms which have a very distinct and certain meaning.

''It follows, therefore, that in a larger class of executory contracts, express and implied, which the law regards as creating *no property right, nor interest analogous to property, but only a mere personal right* and obligation, equity recognizes, *in addition to the personal obligation,* a peculiar right over the thing concerning which the contract deals, which it calls a 'lien,' which though not property, is analogous to property, and by means of which the plaintiff is enabled to follow the identical thing and to enforce the defendant's obligation by a remedy which operates directly upon that thing.''

It has been suggested that Klaustermeyer is entitled to a preference as to his $5,000 on the theory that the bank received his money after it knew of its own insolvency.

The answer to this is that there is no evidence in the record that the officers of the bank knew it was insolvent when the deposit was made, and if they did, or ought to have known, then Klaustermeyer himself, being a director and conferring with them as to its condition, knew, or ought to have known of its condition.

The judgment being erroneous upon the facts as claimed by defendant in error, it is reversed and judgment is rendered for plaintiff in error.